# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## 5:17-cv-131-KDB
## (5:16-cr-20-KDB-DSC-1)

| | | |
|---|---|---|
| TEOFILO SALINAS CERVIN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1). He has also filed an Amended § 2255 Motion to Vacate, (Doc. No. 10).

## I.     BACKGROUND

Petitioner was charged in criminal case number 5:16-cr-20 ("CR") with methamphetamine trafficking conspiracy, 21 U.S.C. §§ 841(a)(1), 846. (Doc. No. 1) (Bill of Information); (CR Doc. No. 5) (Waiver of Indictment). The Information alleges that, "with respect to the conspiracy offense charged in Count One, fifty (50) grams or more of methamphetamine (actual), a Schedule II controlled substance, are attributable to, and were reasonably foreseeable by Defendant (1) TEOFILO SALINAS CERVIN…" and accordingly 21 U.S.C. § 841(b)(1)(A) applies. (CR Doc. No. 1 at 1).

Petitioner pleaded guilty to Count One in exchange for the Government's dismissal of the Indictment in case number 5:15-cr-68.[1] (CR Doc. No. 3 at 1). In a written Plea Agreement,

---

[1] Petitioner was charged in case number 5:15-cr-68 along with several co-Defendants including Gregory Ellis and Brandy Lackey. The charges pertaining to Petitioner in that case were: methamphetamine trafficking conspiracy (21 U.S.C. §§ 841(a)(1), 846); possession with intent to distribute methamphetamine (21 U.S.C. §§ 841(a)(1), (b)(1)(C));

1

Petitioner admitted to being "guilty as charged in Count One." (CR Doc. No. 3 at 1). The Plea Agreement sets forth Petitioner's sentencing exposure of not less than 10 years' imprisonment, up to life imprisonment, a $10,000,000 fine, and at least five years of supervised release. (CR Doc. No. 3 at 2). The parties agreed to jointly recommend that the plea was timely and that the amount of methamphetamine (actual) that was known to or reasonably foreseeable by the Defendant was more than fifty (50) grams. (CR Doc. No. 3 at 2). However, the parties reserved the right to advocate at sentencing the specific amount that is attributable to the Defendant; what the base offense level should be; and to argue their respective positions regarding other offense characteristics, cross-references, special instructions, reductions, enhancements, adjustments, departures and/or variances to the applicable guideline range. (CR Doc. No. 3 at 2-3). The Plea Agreement sets forth the consequences of the guilty plea and the rights Petitioner was waiving by pleading guilty including an express waiver of his appellate and post-conviction rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. (CR Doc. No. 3 at 4-5). The Plea Agreement provides that Petitioner stipulated to the existence of a factual basis for the plea; he read and understood the Factual Basis filed with the Plea Agreement; and the Factual Basis could be used by the Court, U.S. Probation Office, and the United States unless an objection to a particular fact was explicitly reserved within the Factual Basis. (CR Doc. No. 3 at 4).

The Factual Basis states as follows, with Petitioner having preserved his objection to the italicized paragraphs:

1.    On September 3, 2015, a confidential informant ("CI #1") purchased approximately 21 grams (approximately 210 dosage units) of methamphetamine from Defendant (1) Teofilo Salinas CERVIN at his residence, where he lives with (3) BRANDY Frazier LACKEY, in Roaring River (Wilkes County), within the Western District of North Carolina.

---

and possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. §§ 924(c) and 2). (5:15-cr-68, Doc. No. 40).

2

2.	*On September 10, 2015, Defendant (2) Gregory Ryan ELLIS provided a post-Miranda[2] confession to investigators in which he admitted that he works for Defendant (5) Donald Scott LEWIS and has gone with LEWIS twenty times to pick up methamphetamine from a Hispanic male (later identified as Defendant CERVIN) from July 15 into August of 2015. After the first ten trips, during which he waited outside in the vehicle, CERVIN then asked ELLIS to come into his (CERVIN's) residence. On one occasion, CERVIN gave Greg approximately 3.9 grams of methamphetamine, which ELLIS sold to LEWIS for $200. ELLIS stated that he had seen LEWIS receive one ounce (28 grams) of methamphetamine on each of the 10 occasions that he went into the trailer with LEWIS. ELLIS stated that he has seen CERVIN with multiple firearms in his home, including an SKS assault rifle, 2 or 3 different pistols, and some deer rifles. In mid to late August 2015, ELLIS saw what he believed to be 10 to 12 kilograms of methamphetamine on the round kitchen table in CERVIN's residence. ELLIS explained that CERVIN and Defendant (3) BRANDY LACKEY travel to Georgia 2 times each month and receive between 5 and 20 kilograms of methamphetamine each time.*

3.	On September 17, 2015, another confidential informant ("CI #2") purchased approximately 14 grams of methamphetamine from Defendants (1) CERVIN and (3) BRANDY LACKEY after they left their Roaring River residence.

4.	Also on September 17th, immediately after the aforementioned controlled purchase, CI #1 made a controlled purchase of approximately 28 grams of methamphetamine from Defendants (1) CERVIN and (3) BRANDY LACKEY after they had crossed into Watauga County.

5.	Based on the foregoing, the investigative team conducted a traffic stop of Defendants (1) CERVIN and (3) BRANDY LACKEY that same day (9/17/2015) and recovered approximately 42 grams of methamphetamine from them.

6.	Also on September 17th, the investigative team then obtained a search warrant for the residence of Defendants (1) CERVIN and (3) BRANDY LACKEY in Roaring City and recovered approximately 28 grams of methamphetamine, a Smith & Wesson handgun (which was reported stolen by its true owner), an SKS rifle, and a shotgun. Defendants CERVIN and BRANDY LACKEY possessed the seized firearms in furtherance of drug trafficking.

7.	*During a post-Miranda confession, Defendant (3) BRANDY LACKEY admitted that she had trafficked in numerous pounds of methamphetamine with Defendant (1) CERVIN since April 2015. She also confirmed that her ex-husband and co-conspirator, (4) ANTHONY LACKEY, was purchasing methamphetamine for re-distribution from CERVIN.*

8.	During a post-Miranda statement on September 24, 2015, Defendant (1) CERVIN admitted that he had sold methamphetamine to co-defendant (5) LEWIS

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

two times before.

(CR Doc. No. 2 at 1-2) (italics added); <u>see</u> (CR Doc. No. 29 at 4-5).

A Rule 11 hearing came before Magistrate Judge David S. Cayer on April 21, 2016, at which a Spanish language interpreter was sworn. (CR Doc. No. 30 at 2). The Bill of Information was read aloud, including the drug amount of 50 grams or more of methamphetamine actual. (CR Doc. No. 30 at 2). Petitioner stated that he understood. (CR Doc. No. 30 at 3). Petitioner stated, under oath, that he wanted the Court to accept his guilty plea to Count One after consulting with counsel. (CR Doc. No. 30 at 4). Petitioner confirmed that he had received a copy of the Information and discussed its contents with counsel. (CR Doc. No. 30 at 4). Petitioner stated that he fully understood the charge including the minimum and maximum penalties. (CR Doc. No. 30 at 7). Petitioner was advised that his plea may have adverse immigration consequences including deportation. (CR Doc. No. 30 at 7). Petitioner agreed that he understood the consequences of pleading guilty and the rights he was waiving by pleading guilty including the waiver of his appellate and post-conviction rights. (CR Doc. No. 30 at 7, 9. 12). Petitioner further agreed that he had spoken to his lawyer about how guidelines may apply to case; the Court would not be able to determine the applicable guideline range until after the Presentence Investigation Report ("PSR") has been prepared; Petitioner would have the opportunity to comment on the PSR; and Petitioner may receive a sentence different from the guidelines. (CR Doc. No. 30 at 7-8). Petitioner admitted that he is, in fact, guilty of Count One of the Information. (CR Doc. No. 30 at 10). The Government summarized the Plea Agreement and Petitioner stated that he understood and agreed with those terms, including the appellate and post-conviction waiver. (CR Doc. No. 30 at 10-12). Petitioner further stated that he read, understood, and agreed with the Factual Basis. (CR Doc. No. 30 at 13). The following then transpired:

THE COURT: Has anyone threatened, intimidated or forced you to enter a guilty plea today?

THE DEFENDANT: No, sir, no one.

THE COURT: Other than the terms of your plea agreement, has anyone made you any promises of leniency or a light sentence to induce you to plead guilty?

THE DEFENDANT: No.

THE COURT: Have you had enough time to discuss with your attorney any possible defenses you may have to this charge?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with the services of your attorney in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything that you would like to say at this time about the services of your attorney?

THE DEFENDANT: That he's done an excellent job.

THE COURT: All right, sir.

THE DEFENDANT: And I'm very grateful.

(CR Doc. No. 30 at 13-14).

The PSR sets forth the offense conduct consistent with the Factual Basis. (CR Doc. No. 11 at ¶¶ 6-14). The PSR additionally notes:

> [T]he U.S. Attorney's Office in Charlotte, NC, provided discovery documents, including a laboratory report, dated October 7, 2015, for methamphetamine which was seized from Teofilo Salinas Cervin and Brandy Frazier Lackey. The report indicates that the laboratory analysis determined the presence of methamphetamine hydrochloride with an **average purity over 95% for three samples and 99.1% for one sample**.
> …
> Based on the Factual Bases and discovery material, including the laboratory results of the methamphetamine seized from the defendant, the amount of actual methamphetamine reasonably foreseeable to the defendant is **at least 10.5 kilograms**.

5

(CR Doc. No. 11 at 15, 17) (emphasis added).

The PSR contains the following acceptance of responsibility statement by Petitioner:

> I did knowingly and intentionally conspire and agree with other persons, known and unknown to the United States, to possess with intent to distribute a mixture and substance containing a detectable amount of methamphetamine … in violation of Title 21, United States Code, Sections 841(a)(1) and 846 … [and] fifty (50) grams or more of methamphetamine (actual) … are attributable to, and were reasonably foreseeable by Defendant….

(CR Doc. No. 11 at ¶ 20).

The PSR calculated the base offense level as 38 based on 4.5 kilograms or more of methamphetamine actual.  (CR Doc. No. 11 at ¶ 23); see U.S.S.G. § 2D1.1 (2015) (base offense level of 38 for offenses involving 4.5 kilograms or more of methamphetamine (actual)).  Two levels were added because a firearm was possessed. (CR Doc. No. 11 at ¶ 24). Three levels were deducted for acceptance of responsibility, resulting in a base offense level of 37. (CR Doc. No. 11 at ¶¶ 30-32). Petitioner had zero criminal history points and a criminal history category of I. (CR Doc. No. 11 at ¶¶ 36-37). The resulting guideline range was 210 to 262 months' imprisonment followed by five years of supervised release. (CR Doc. No. 11 at ¶¶ 55, 58). Neither Petitioner nor the Government filed written objections to the PSR.

The sentencing hearing came before Judge Voorhees on August 10, 2016, at which a Spanish language interpreter was sworn. (CR Doc. No. 29 at 2). Petitioner agreed that he had pleaded guilty to Count One before Magistrate Judge Cayer freely and voluntarily and that he understood the nature of the offense and the possible penalties. (CR Doc. No. 29 at 2). Petitioner again stated that he was guilty as charged in Count One. (CR Doc. No. 29 at 2-3). Petitioner agreed that he was fully satisfied with his attorney's services. (CR Doc. No. 29 at 3). Petitioner also admitted that he had a copy of the PSR and that he had gone over it with the help of an interpreter and discussed it with counsel the prior day. (CR Doc. No. 29 at 4).

The Court then asked the parties whether there were any objections to the PSR. Petitioner's counsel admitted that no PSR objections had been filed but that the parties had reserved the right to argue drug amount at sentencing and that Petitioner had objected to paragraphs 2 and 7 of the Factual Basis. (CR Doc. No. 29 at 4-5). The Court noted that PSR objections should have been filed because the drug amount could affect the guidelines range, however, the Government waived the procedural objection and the Court allowed Petitioner to argue drug amount "as if it were an objection." (CR Doc. No. 29 at 5-8).

The Government argued that the objected-to statements in paragraphs 2 and 7 of the Factual Basis were credible. It argued that Paragraph 2, which is based on co-Defendant Ellis's post-Miranda statement, was credible because it was a statement against Ellis's penal interest at the time of his arrest and was based on 10 or 20 opportunities to observe drugs inside Petitioner's home. (CR Doc. No. 29 at 7). The Government argued that Paragraph 7, which is based on co-Defendant Lackey's post-Miranda statement, was credible because it was made against Lackey's penal interest and because she was Petitioner's girlfriend. (Id.).

Counsel took a moment to speak with Petitioner and announced that Petitioner wanted to testify regarding drug quantity. (CR Doc. 29 at 8). Counsel then asked to confer with Petitioner again and the Court called a 10-minute recess. (CR Doc. No. 29 at 8-9). After the recess, counsel announced that "Mr. Cervin has reconsidered his decision to testify in this case." (CR Doc. No. 29 at 9). Counsel then argued that the 4.5 kilogram quantity in the PSR should not be relied upon because it was based on estimates, *i.e.*, the number of trips that Petitioner allegedly took to Atlanta with different quantities of drugs, and the amount that Ellis allegedly observed on Petitioner's kitchen table. Because these amounts were only estimated amounts, counsel asked the Court for leniency and to "break them down … two levels from below 4.5 kilograms." (CR Doc. No. 29 at

7

9).

The Court found that the preponderance of the evidence supported the 10.5 kilogram drug quantity found by the probation officer and adopted the PSR. (CR Doc. No. 29 at 10).

Counsel argued for a sentence at the low end of the guidelines based on factors including Petitioner's children in Mexico. (CR Doc. No. 29 at 10). Petitioner addressed the Court and stated: "I'm sorry for what I did. I didn't know I was committing a crime, but whatever I was doing was to – for the benefit of my children. I didn't want them to starve." (CR Doc. No. 29 at 11).

The Government argued for a guideline sentence noting *inter alia* that Petitioner benefitted greatly from the Plea Agreement because the Government dismissed a § 924(c) charge in case number 5:15-cr-68 which would have carried a consecutive mandatory sentence of five years to life imprisonment. (CR Doc. No. 29 at 11).

The Court considered the relevant factors and sentenced Petitioner at the bottom of the advisory guideline range to 210 months' imprisonment followed by five years of supervised release. (CR Doc. No. 29 at 14); (CR Doc. No. 15) (Judgment).

On direct appeal, counsel filed a memorandum brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), stating that there are no meritorious issues for appeal but questioning whether the sentence imposed was reasonable and whether plea counsel was ineffective. <u>See</u> (4th Cir. Case No. 16-4513, Doc. 26). Petitioner was notified of his right to file a *pro se* brief but declined to do so. The Fourth Circuit affirmed on May 22, 2017, finding that the sentence is procedurally and substantively reasonable, and that the record does not conclusively establish ineffective assistance of counsel so that this claim should be raised, if at all, in a § 2255 motion. <u>United States v. Cervin</u>, 697 F. App'x 166 (4th Cir. 2017).

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on July 19, 2017 while the direct

appeal was still pending. See Cervin, 697 F. App'x at 166 (declining to hold the appeal in abeyance pending the outcome of his § 2255 motion). He appears to argue (renumbered): (1) counsel was ineffective: (A) with regards to the guilty plea; and (B) with regards to sentencing; and (2) the Court erred by failing to apply a downward sentencing departure.

The Government filed a Response, (Doc. No. 5), arguing that the record conclusively establishes that counsel did not provide ineffective assistance and that his claim that the Court should have granted him a downward departure sentence on its own initiative is procedurally defaulted and is not cognizable on § 2255 review.

Petitioner filed a Reply, (Doc. No. 7), arguing that counsel promised Petitioner that he would receive a sentence of less than 10 years and that counsel should have insisted that a drug amount be included in the Plea Agreement. Petitioner contends that he would not have pleaded guilty but for counsel's ineffective assistance and that he is "actually innocent" of the charges against him. (Doc. No. 7 at 2). Petitioner further argues that, during a recess at the sentencing hearing, counsel convinced him not to testify regarding drug amount and an effective lawyer would have had the witnesses recant their allegations against him on cross-examination. He also reiterates his downward departure argument.

In July 2018, Petitioner filed a Motion to Amend, (Doc. No. 8), stating that his § 2255 Motion to Vacate failed to accurately convey his claims because it was not translated properly. (Doc. No. 8). The Court denied the Motion to Amend without prejudice for Petitioner to refile a Motion to Amend along with a proposed Amended Motion to Vacate. (Doc. No. 9)

Petitioner filed an Amended § 2255 Motion to Vacate on August 24, 2018.[3] (Doc. No. 10).

---

[3] It appears that the Amended § 2255 Motion to Vacate may have been filed outside the applicable one-year statute of limitations. See 28 U.S.C. § 2255(f). However, the Court declines to address its timeliness *sua sponte*. See Howie v. United States, 2012 WL 6194406 (W.D.N.C. Dec. 12, 2012) (recognizing that § 2255's statute of limitations is not

He again asserts that counsel was ineffective with regards to the guilty plea and at sentencing but he offers new arguments in support of his claims. He also raises a new claim of trial court error, *i.e.*, that the Court erred by sentencing Petitioner based on an incorrect drug quantity. Petitioner asks to withdraw his guilty plea and for the Court to adjust his sentence.

## II.     STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Rules Governing Section 2255 Proceedings provide that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. Rule 4(b), 28 U.S.C. foll. § 2255.  After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved based on the record and governing case law and that no evidentiary hearing is warranted. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

Petitioner raises a number of claims of ineffective assistance of counsel and substantive error in the § 2255 Motion to Vacate and the Amended § 2255 Motion to Vacate. They will be

---

jurisdictional and that courts *may* consider it *sua sponte*); see also Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2001) ("[N]otice and an opportunity to respond are particularly appropriate when the prisoner is *pro se*….").

addressed in turn.[4]

**(1)**     **Ineffective Assistance of Counsel**

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689).

**(A)**     **Guilty Plea**

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59;

---

[4] The claims in the § 2255 Motion to Vacate and Amended § 2255 Motion to Vacate have been consolidated, restated, and renumbered. Any argument or sub-claim not specifically addressed in this Order has been considered and rejected.

Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

Petitioner argues that counsel performed deficiently in a number of respects, that he would not have pleaded guilty had counsel performed effectively, and that he would have received a lower sentenced had he gone to trial.

      **(i)**     Petitioner contends that counsel was ineffective for tricking him into signing the Plea Agreement. He claims that he rejected the Plea Agreement but that counsel asked him to sign the last page of the Plea Agreement on a promise of obtaining more favorable terms, then falsely represented to the Court that Petitioner had agreed to the Plea Agreement.

This claim is conclusively refuted by the record. The prosecutor summarized the Plea Agreement at the Rule 11 hearing and Petitioner stated under oath that he understood, agreed with the Plea Agreement, and had signed it. (CR Doc. No. 30 at 12). Petitioner again stated under oath at the sentencing hearing that he had freely and voluntarily pleaded guilty. (CR Doc. No. 29 at 2-3). Petitioner's self-serving and unsupported claim that counsel somehow deceived him into signing the Plea Agreement and had promised a more favorable agreement is rejected. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

      **(ii)**     Petitioner contends that counsel coerced him to plead guilty by "threatening" him with a life sentence and by promising a sentence of 10 years or less if he pleaded guilty. (Doc. No. 10 at 4); see (Doc. No. 7 at 2) (counsel "told [Petitioner] many times [he] would

get less than 10 years"); (Doc. No. 10-1 at 9) ("counsels constantly threaten me stating that 'if I would say something in front of the Judge or argued anything else other than what was in the indictment I would get LIFE.'").

This claim is conclusively refuted by the record. Petitioner was informed in the Plea Agreement and during the Rule 11 hearing that his sentencing exposure was a minimum mandatory of 10 years and a maximum of life imprisonment. (CR Doc. No. 3 at 2); (CR Doc. No. 30 at 2). He stated under oath at the Rule 11 hearing that he understood. (CR Doc. No. 30 at 3). To the extent that counsel may have cautioned the Petitioner that he could receive a life sentence, this was accurate advice. Petitioner's suggestion that counsel promised him a 10-year sentence is refuted by Petitioner's statements under oath at the Rule 11 hearing that he understood that the Court would not be able to determine the applicable sentencing guideline range until after a PSR was completed; he may receive a higher or lower sentence than is called for by the guidelines; he would not be permitted to withdraw his plea if the Court imposed a sentence more severe than he expected; and there were no agreements by the parties other than those contained in the Plea Agreement. (CR Doc. No. 30 at 8, 12). Petitioner's assertion of coercion or promises is further undermined by his own statements, under oath, that he was not threatened or coerced, or promised leniency or a light sentence to induce his guilty plea. (CR Doc. No. 30 at 13). His self-serving and unsupported contentions to the contrary are rejected. Blackledge, 431 U.S. at 74.

      **(iii)**    Petitioner argues that counsel was ineffective for having him plead guilty to an offense of which he is innocent, and for agreeing that an independent factual basis supports the plea where no independent factual basis exists.

This claim is conclusively refuted by Petitioner's repeated admissions under oath that he is guilty of the charged offense and that he read, understood, and agreed with the Factual Basis.

(CR Doc. No. 30 at 10, 13); (CR Doc. No. 29 at 2-3). His present contentions to the contrary are rejected. Blackledge, 431 U.S. at 74.

> **(iv)** Petitioner argues that counsel should have insisted that the Plea Agreement contain a stipulated drug quantity.

This claim is too speculative to support relief. Petitioner has not come forward with any evidence that a plea offer including a stipulated drug amount was forthcoming from the prosecution or would have been acceptable to the Court. See generally Frye, 566 U.S. at 147; United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Counsel cannot be deemed ineffective for failing to procure a plea that did not exist. This claim will therefore be denied.

> **(v)** Petitioner argues that counsel should not have allowed him to plead guilty because he does not understand English and lacks any knowledge of American law.

This claim is conclusively refuted by the record. A Spanish language interpreter assisted Petitioner with every communication with counsel and an interpreter was sworn at each of Petitioner's hearings. See (CR Doc. No. 30 at 2) (interpreter sworn at the Rule 11 hearing); (CR Doc. No. 29 at 2) (interpreter sworn at the sentencing hearing); (CR Doc. No. 13 at 1) (Supplemental Motion for Interpreter, stating that counsel "used and will keep using the interpreter from the time of his appointment to represent the defendant and throughout the time of his representation of the defendant to communicate with defendant"). Any suggestion that Petitioner's plea was involuntary because he failed to understand American law is conclusively refuted by the record. The charges, Petitioner's sentencing exposure, and the consequences of pleading guilty were clearly explained in the Plea Agreement and at the Rule 11 hearing. Petitioner stated under

oath at the Rule 11 hearing that he understood and that he was pleading guilty freely and voluntarily. His present self-serving claims to the contrary will be rejected.

(vi)     Finally, Petitioner contends that he would not have pleaded guilty but for counsel's allegedly deficient performance and that he would have received no more than 90 months' imprisonment, minus a one-year departure, had he gone to trial.

Petitioner's contention that he would have proceeded to trial but for counsel's allegedly deficient performance is belied by his statements under oath at the Rule 11 hearing that he was pleading guilty because he is guilty of the charged offense, and that the plea was knowing, voluntary, and without any threats, coercion, or promises of leniency. <u>See</u> (CR Doc. No. 30); <u>see also</u> (CR Doc. No. 29) (plea hearing admission that he is guilty); (CR Doc. No. 110) (PSR acceptance of responsibility). Further, it would not have been objectively reasonable for Petitioner to proceed to trial. The Plea Agreement resulted in the dismissal of additional offenses charged in case number 5:15-cr-68 including possession of a firearm in furtherance of a drug trafficking crime that, if Petitioner had been convicted, would have resulting in a mandatory consecutive sentence of at least five years and up to life imprisonment. It would not have been reasonable for Petitioner to proceed to trial under these circumstances and doing so would have greatly increased, not decreased, his sentencing exposure.

For all the foregoing reasons, Petitioner's claims that counsel was ineffective with regards to his guilty plea are meritless and will be denied.

**(B)     Sentencing**

When applying the <u>Strickland</u> prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." <u>Glover v. United States</u>, 531 U.S. 198, 203 (4th Cir. 2001).

15

**(i)** First, Petitioner contends that he did not know that he could challenge the PSR.

This claim is conclusively refuted by the record. The Plea Agreement itself notified Petitioner that he was able to challenge the PSR. The Plea Agreement states that the parties were reserving the right to argue the specific amount of methamphetamine that was attributable to Petitioner; what the base offense level should be; and their respective positions on specific offense characteristics, cross-references, special instructions, reductions, enhancements, adjustments, departures, and variances to the applicable guideline range. (CR Doc. No. 3 at 2). The Plea Agreement further provides that the Court and U.S. Probation Office could use the facts set forth in the Factual Basis to determine the advisory guideline range and applicable sentence unless Petitioner explicitly reserved his objection to particular facts, which Petitioner did. (CR Doc. No. 3 at 4). Further, Petitioner was informed at the Rule 11 hearing that the Court would be unable to determine the applicable sentencing guideline range "until after your presentence report has been prepared and you've had an opportunity to comment on it ..." and Petitioner stated under oath that he understood. (CR Doc. No. 30 at 8). The foregoing demonstrates that Petitioner was well aware of his right to object to the PSR and his present self-serving claims to the contrary will be rejected.

**(ii)** Petitioner argues that counsel failed to review the PSR with him.

This claim is also conclusively refuted by the record. Petitioner stated under oath at the sentencing hearing that he received a copy of the PSR and that he had gone over it with his lawyer and an interpreter the prior day. (CR Doc. No. 29 at 4). Petitioner's present contention to the contrary will be rejected.

**(iii)** Petitioner argues that counsel was ineffective for failing to file a PSR objection regarding the allegedly false drug quantities that were based on incredible information

16

from cooperating co-Defendants Ellis and Lackey. He contends that a good lawyer would have had those witnesses recant their testimony on cross-examination.

The record reflects that counsel did not file objections to the PSR with regards to drug quantity. However, the Government waived this procedural error and the Court allowed counsel to argue drug quantity "as if it were an objection." (CR Doc. No. 29 at 5-8). Therefore, to the extent that counsel performed deficiently by failing to file written objections, this was not prejudicial because counsel was permitted to argue the issue at sentencing.

Petitioner contends that counsel should have argued that Ellis and Lackey were incredible because they were trying to obtain lower sentences for themselves by implicating Petitioner; that Ellis had a criminal history; that police surveillance did not bear out the information that Ellis provided about Petitioner; and that Lackey only implicated Petitioner because she was a young meth addict who was threatened with a life sentence and pressured by the police and her parents.

There is no reasonable probability that Petitioner would have received a lower sentence had counsel made these arguments. The Court was well aware that Ellis and Lackey were Petitioner's co-Defendants in case number 5:15-cr-68 and that both of them had pleaded guilty. See (CR Doc. No. 3 at 1) (Plea Agreement citing case number 5:15-cr-68); (CR Doc. No. 29 at 11-12) (prosecutor noting at Petitioner's sentencing hearing that Ellis and Lackey had both pleaded guilty). The Court was also well aware of Ellis' criminal history, having sentenced Ellis earlier that same day. See (CR Doc. No. 29 at 6-7) (prosecutor noting at Petitioner's sentencing hearing that Ellis was sentenced earlier that day); see also (5:15-cr-68 Doc. No. 104) (Ellis' PSR); (5:15-cr-68, Doc. No. 144) (Ellis' August 10, 2016 sentencing hearing transcript). Although Petitioner contends that Lackey was "threatened by police and the government that if she did not say what they wanted her to say that '[s]he would be spending the rest of her adult life in a jail cell,'" he has

failed to come forward with any evidence in support of that statement or of his contentions that she was coached or otherwise coerced to implicate him. (CR Doc. No. 1 at 5). Nor has Petitioner come forward with any evidence that police surveillance was inconsistent with Ellis' statement about Petitioner. In sum, Petitioner has failed to come forward with any evidence that reasonable counsel would have presented at the sentencing hearing which had a reasonable probability of resulting in a more favorable sentence. See generally Miller v. United States, 261 F.2d 546, 547 (4th Cir.1958) (*per curiam*) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence."); Dyess, 730 F.3d at 354. Petitioner's contention that reasonable counsel would have obtained recantations from Ellis and Lackey is speculative and unsupported. Dyess, 730 F.3d at 354. Moreover, reasonable counsel could have concluded that further belaboring Petitioner's disagreement with the drug quantity could have jeopardized Petitioner's three-point reduction for acceptance of responsibility. See U.S.S.G. § 3E1.1, App. note 1(A) ("… a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility."). Accordingly, this claim will be denied.

**(iv)** Petitioner argues that he should have been sentenced based on a reduced drug amount because the drugs should only have been counted at approximately 10% of their weight because the drugs were heavily cut "garbage." (CR Doc. No. 1 at 7).

Petitioner's claim that the methamphetamine was heavily cut is refuted by the record insofar as the laboratory analysis of drugs seized from Petitioner and Lackey on October 7, 2015 had an average purity over 95% for three samples and 99.1% for one sample. (CR Doc. No. 11 at ¶ 15). Further, Petitioner has failed to come forward with any credible evidence that the drugs were

heavily cut. If the Court relies on the drug quantity included in the PSR, the "defendant bears the burden of establishing that the information relied on by the district court in making its findings is incorrect; mere objections are insufficient." United States v. Randall, 171 F.3d 195, 210–11 (4th Cir. 1999). Petitioner chose not to testify at the sentencing hearing[5] and counsel's argument that the methamphetamine was heavily cut would not have carried the burden of proof to overcome the drug amount in the PSR. See, e.g., Jones v. United States, 2012 WL 925007 (W.D.N.C. March 19, 2012) (denying petitioner's claim that counsel was ineffective for failing to object to drug amount where petitioner pleaded guilty to conspiracy to manufacture with intent to distribute methamphetamine, he admitted to cooking methamphetamine 20 or 30 times, no cutting agents were found in his home, and he failed to come forward with any credible evidence that counsel could have used to argue that he was responsible for a lesser amount of methamphetamine). Petitioner has failed to demonstrate that counsel performed deficiently by failing to argue for a reduced drug amount based on cutting or that he was prejudiced, and therefore, this claim will be denied.

        **(v)**        Petitioner appears to argue that counsel was ineffective for convincing him not to testify at the sentencing hearing. Petitioner argues that counsel "talked him out of" testifying at the sentencing hearing and told him to shut his mouth so the Court would "help [them] out" with the sentence, which did not come to pass. (Doc. No. 7 at 1); (Doc. No. 10-1 at 8).

        Petitioner's suggestion that counsel pressured him not to testify at the sentencing hearing is meritless. The record reveals that counsel conferred with Petitioner during the sentencing hearing then announced that "Mr. Cervin desires to testify." (CR Doc. No. 29 at 8). However, after conferring with counsel again, "Mr. Cervin … reconsidered his decision to testify…." (CR Doc.

---

[5] See Section (B)(v), *infra*.

No. 29 at 9). The foregoing reveals that counsel was willing to call Petitioner at the sentencing hearing and that the decision not to testify was Petitioner's. Further, any advice by counsel that Petitioner's testimony may increase the guideline range by, for instance, eliminating the acceptance of responsibility reduction or adding a perjury enhancement, was sound advice that counsel was not ineffective for providing. To the extent that counsel suggested that the Court may "help [them] out" by imposing a lenient sentence, this in fact came to pass in that the Court sentenced Petitioner at the bottom of the guideline range. Moreover, Petitioner has failed to proffer credible testimony that he would have provided at the sentencing hearing which had a reasonable probability of reducing the drug amount in the PSR and lowering his sentence.[6]

   **(vi)** Petitioner contends that counsel was ineffective for failing to request a one-year sentencing departure pursuant to <u>United States v. Smith</u>, 27 F.3d 649 (D.C. Cir. 1994) because Petitioner's status as a deportable alien would expose him to harsher prison conditions by, for instance, making him ineligible for a halfway house or home detention.[7]

  In <u>Smith</u>, the United States Court of Appeals for the D.C. Circuit addressed whether a sentencing court may depart solely because the defendant is a deportable alien and faces the prospect of objectively more severe prison conditions than he would otherwise face. The D.C. Circuit concluded that "a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence…." <u>Id.</u> at 655. The Fourth Circuit has "implicitly concluded that district courts have the discretion to impose

---

[6] Petitioner argues, *inter alia*, that he would not have been living in a trailer park if he had been a high-level drug dealer and that his car was not capable of making the long trip to Atlanta to pick up drugs. This would not have undermined the credible evidence of drug quantity including the statements against penal interest by Ellis and Lackey and the laboratory analysis regarding purity.

[7] Petitioner also complains about the general conditions of his confinement. However, such claims are not appropriate in a § 2255 Motion to Vacate and they should be brought, if at all, in a separate civil action. <u>See</u> generally <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 499 (1973); <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971) (federal equivalent of 42 U.S.C. § 1983).

below-guidelines sentences" because a defendant's status as a deportable alien will subject him to harsher conditions than would apply to a citizen, however, district courts are not required to do so. United States v. Salguero-Ortiz, 483 F. App'x 858, 864 (4th Cir. 2012) (finding that the trial court did not err by failing to raise the issue *sua sponte*) (citing United States v. Hyppolite, 65 F.3d 1151, 1159 (4th Cir. 1995))

Petitioner's belief that he could have received a downward departure sentence had counsel mentioned Smith at sentencing is nothing more than speculation. See, e.g., Gonzalez-Martinez v. Thomas, 2016 WL 2342879 (D.S.C. March 31, 2016) (denying § 2241 relief on petitioner's claim that he was entitled to a downward departure at sentencing because he is a deportable alien; such a claim of ineffective assistance of counsel would not have merit), *report adopted* 2016 WL 1762754 (D.S.C. May 3, 2016). Even if counsel had moved for a downward departure based on Smith, nothing would have obligated the Court to grant such a motion. Petitioner's hope that such would have occurred is too speculative to warrant § 2255 relief. Therefore, this claim will be denied.

**(vii)**    Petitioner argues that counsel admitted there were additional grounds that counsel could have raised in PSR objections but that counsel failed to raise them.

This claim is too vague and conclusory to support relief because Petitioner has not clearly identified counsel's alleged deficiencies or demonstrated a reasonable probability that, but for counsel's deficient performance, he would have received a lower sentence.  See generally Dyess, 730 F.3d at 354 (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court).

**(viii)**    Petitioner argues that he was prejudiced because he would have received a lower sentence but for counsel's alleged deficiencies with regards to sentencing.  He argues in the

§ 2255 Motion to Vacate that the correct amount is six ounces (170 grams), resulting in an offense level of 28 and a sentence of no more than 97 months had he gone to trial. (Doc. No. 1 at 6). In the Amended § 2255 Motion to Vacate, Petitioner argues that the correct drug quantity was 280 grams (9.87 ounces).

Petitioner has failed to present any credible evidence in support of either of these reduced drug amounts. Further, he was sentenced at the low end of the advisory guidelines range and he has not come forward with any evidence or argument that had a reasonable probability of achieving an even lower sentence than the one he received. Therefore, Petitioner has failed to demonstrate that counsel's allegedly deficient performance prejudiced him with regards to sentencing and his ineffective assistance claims will be denied.

**(2)** **Trial Court Error**

Finally, Petitioner appears to argue that the Court erred by sentencing him based on a miscalculated drug quantity, and by failing to apply a one-year reduction pursuant to Smith which violated equal protection.

Claims of error that could have been raised before the trial court and on direct appeal, but were not, are procedurally defaulted from § 2255 review unless the petitioner shows both cause for the default and actual prejudice, or demonstrates that he is actually innocent of the offense. See Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Bowman, 267 F. App'x 296, 299 (4th Cir. 2008). "[C]ause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). To show prejudice, a petitioner must demonstrate that errors in the proceedings "worked to his actual and substantial disadvantage" and were of constitutional dimension. See United States v. Frady, 456 U.S. 152, 170 (1982). To show

22

actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." United States v. Jones, 758 F.3d 579, 584 (4ᵗʰ Cir. 2014); see also McQuiggin v. Perkins, 569 U.S. 383, 393 (2013) ("a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims … on the merits notwithstanding the existence of a procedural bar to relief.").

Petitioner contends that he is actually innocent of the charge to which he pleaded guilty. (Doc. No. 7 at 2). However, this contention is belied by Petitioner's repeated statements under oath that he is guilty of committing the offense at issue. (CR Doc. No. 30 at 10); (CR Doc. No. 29 at 2-3). Nor has Petitioner demonstrated cause and prejudice.[8] Therefore, Petitioner's claims that the Court erred with regards to sentencing are procedurally defaulted from § 2255 review.

Further, these sentencing claims are not cognizable in this collateral proceeding. Barring "extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." United States v. Pregent, 190 F.3d 279, 283-84 (4ᵗʰ Cir. 1999). Section 2255 provides relief for cases in which "the sentence was in excess of the maximum authorized by law." Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines. See United States v. Mikalajunas, 186 F.3d 490, 495-96 (4ᵗʰ Cir. 1999) ("misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice."). Merely alleging a miscalculation of the guidelines does not give rise to a constitutional issue and therefore is not

---

[8] Petitioner contends in his Amended § 2255 Motion to Vacate that he was not informed of his right to appeal. (Doc. No. 10 at 4-6). To the extent that Petitioner attempts to argue that counsel's alleged ineffective assistance excuses his procedural default of this claim, this argument is baseless because Petitioner had a direct appeal, counsel filed a memorandum brief, and Petitioner was given the opportunity to file a *pro se* brief which he declined to do. To the extent that Petitioner suggests that he was not adequately represented on direct appeal because the same lawyer who represented him in district court also represented him on appeal, Petitioner is mistaken. (Doc. No. 10-1 at 8). Charles Linwood Morgan, Jr. represented Petitioner in this Court whereas D. Baker McIntyre, III filed the Anders brief on direct appeal.

cognizable in the context of a § 2255 motion to vacate. <u>Pregent</u>, 190 F.3d at 284.

Petitioner's guideline sentence did not exceed the statutory maximum of life imprisonment. The sentencing calculation issues that Petitioner presently raises, therefore, are not cognizable in this § 2255 action and they will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate and Amended § 2255 Motion to Vacate are dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and Amended Motion to Vacate, (Doc. No. 10), are **DISMISSED** and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

24

Signed: February 9, 2021

Kenneth D. Bell
United States District Judge

25